773 So.2d 865 (2000)
Gary HERNANDEZ
v.
ESKCO, INC.
No. 2000-CA-0174.
Court of Appeal of Louisiana, Fourth Circuit.
November 15, 2000.
Writ Denied February 9, 2001.
*866 Thomas L. Smith, New Orleans, LA, Counsel for Plaintiff/Appellant.
Philip J. Borne, Joseph M. Guillot, Christovich & Kearney, L.L.P., New Orleans, LA, Counsel for Defendant/Appellee.
Court composed of Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN, Judge MAX N. TOBIAS, Jr.
TOBIAS, Judge.
Gary Hernandez ("Hernandez") suspensively appeals a judgment of the Office of Workers' Compensation granting summary judgment in favor of the defendants, ESKCO, Inc. ("ESKCO"), and its insurer, Highlands Insurance Company. The judgment terminated Henandez's workers' compensation benefits pursuant to La. R.S. 23:1208. We conduct a de novo review of the record to determine if the judgment is manifestly erroneous or clearly wrong.
On 21 March 1989, Hernandez sustained head, neck and back injuries in a workrelated accident while employed by ESKCO. Hernandez filed a disputed claim for compensation on 19 November 1998, asserting ESKCO was paying an incorrect compensation rate, had failed to pay pharmacy bills, and would not authorize necessary back surgery. ESKCO deposed Hernandez on 10 March 1999. After further discovery, the defendants filed their motion for summary judgment, arguing that Hernandez made false statements at the deposition regarding his prior physical condition and employment history with Hernandez Mattress Company, his family business, thus forfeiting any right to workers' compensation benefits pursuant to La. R.S. 23:1208. In support of the motion, the defendants submitted Hernandez's 10 March 1999 deposition, medical records, and responses to their discovery requests. The defendants also submitted Hernandez's amended complaint, trial testimony, deposition, and discovery responses from a civil rights suit he had filed in federal court in 1996.[1] Following a hearing, the workers' compensation judge found ESKCO had satisfied its burden of proof in moving for summary judgment.
*867 On appeal, Hernandez asserts the following assignments of error:
(1) The workers' compensation judge erred in finding that Hernandez committed fraud, thus forfeiting his right to worker's compensation benefits;
(2) The workers' compensation judge erred in granting summary judgment as disputed facts exist;
(3) The workers' compensation judge erred as a matter of law by not applying the statute which was in effect at the time of Hernandez's accident and injury;
(4) The workers' compensation judge erred in concluding Hernandez's statements were intended for the purpose of obtaining workers' compensation benefits as contemplated by La. R.S. 23:1208 because Hernandez had suffered a work-related injury and was receiving benefits at the time the alleged false statements were made;
(5) The judge lacked subject matter jurisdiction to determine Hernandez forfeited workers' compensation benefits pursuant to La. R.S. 23:1208.
La. R.S. 23:1208 provides in part:
§ 1208. Misrepresentations concerning benefit payments; penalty
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * * * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
The only requirements for forfeiture of benefits under Section 1208 are: a false statement or representation that is willfully made for the purpose of obtaining or defeating any benefit or payment under the workers' compensation law. Resweber v. Haroil Construction Company, 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, 14. Section 1208 is a broadly worded statute that applies to any false statements or representations, including those concerning prior injuries, and the employer need not show that it has been prejudiced as a condition of forfeiture. Id. If the requirements are met, Section 1208 applies and its forfeiture provisions must be enforced. Id.
Statutory forfeiture is a harsh remedy and must be strictly construed. Benoit v. Frank's Casing Crew, 97-1522 (La.App. 3 Cir. 5/20/98); 713 So.2d 762, writ denied, 98-1697 (La.10/9/98); 726 So.2d 31. False statements that are inadvertent or inconsequential will not result in forfeiture. Menard v. Mama's Fried Chicken, 97-488 (La.App. 3 Cir. 3/6/98); 709 So.2d 303, writ denied, 98-956 (La.6/5/98); 720 So.2d 681.
At the 10 March 1999 deposition, Hernandez testified about his physical condition before and after the 1989 accident at ESKCO. He specifically denied having any automobile accidents or injuring his neck in an automobile accident in 1988. However, Dr. Emile Bertucci, Hernandez's treating physician, reported that Hernandez complained of neck pain in December 1985 following an automobile accident in September 1985. Three years later, on 10 September 1988, Dr. Bertucci noted that Hernandez had pain over the right side of his neck as the result of an injury sustained in a 1975 motorcycle accident and that he aggravated the condition in an automobile accident in July of 1988, eight months prior to his accident at ESKCO. In fact, Dr. Bertucci noted that Hernandez consistently complained of neck pain from 1987 through 1988.
When defense counsel questioned Hernandez at the March 1999 deposition regarding his headache complaints, Hernandez acknowledged that he had been treated for headaches prior to his accident *868 at ESKCO, but the pain was never severe and the headaches had ceased when he quit refinery work. He described his post-accident headaches as located behind his eyes, in his temples, and in the back of his neck, and claimed the nausea, vomiting, and light sensitivity accompanying them prevented him from working.
Contrary to Hernandez's deposition testimony, his past medical records disclose that he first suffered vascular headaches in 1979 and later received consistent treatment for them from 1982 through 1989. The records also indicate that Hernandez complained of severe headaches behind his eyes in 1987 and of frontal lobe headaches just two months before his accident at ESKCO. At an office visit in September 1988, Dr. Bertucci specifically noted that Hernandez complained of waking with headaches each morning.
Hernandez also testified in his deposition that he had never injured his lower back or experienced back pain prior to his March 1989 accident at ESKCO. Again, however, his medical records contradict his deposition testimony. Hernandez complained of lower back pain to Dr. Lucas DiLeo in September 1980. Later, in May 1982, Dr. DiLeo diagnosed Hernandez with severe lumbar-sacral strain with 25% restriction of mobility upon forward bending. Dr. Bertucci, too, noted that Hernandez suffered lower back pain in April and June 1987.
Although Hernandez testified that he first noticed lower back pain a day or two after the March 1989 accident at ESKCO and reported it to Dr. DiLeo within a week thereof, the medical records disclosed that he made his first complaint of lower back pain following the accident at an office visit on 13 November 1989. At that time, however, Hernandez told Dr. DiLeo that he injured his lower back walking up and down a steep levee. When asked about the inconsistency, Hernandez claimed Dr. DiLeo removed from his records all references to complaints of post-accident lower back pain at the urging of Highlands' claims adjuster. He also claimed that Dr. Gordon Nutik, who examined him at the request of Highlands, failed to note his complaints of lower back pain at an office visit on 5 September 1989 because Dr. Nutik actually aggravated the injury while examining him.
The medical records submitted by the defendants disclose Hernandez made no allegations of lower back pain immediately following the accident at ESKCO. Despite Hernandez's testimony that Dr. John Olson, a neurologist, and Dr. DiLeo told him his lower back pain was related to the work-related accident, he offered no evidence to support his claim.
In addition to Hernandez's claims regarding his physical condition before and after his accident at ESKCO, the defendants argue that he made false claims regarding his involvement with his family business. At the March 1999 deposition, Hernandez testified that he had worked for the mattress company from 1967 through 1978. He explained that he has held the title of secretary -treasurer of the company since 1995 and signs checks, but supervises no one and receives no income from the company. The defendants, however, submitted Hernandez's deposition taken in his civil rights case, where he testified that he resumed working at the mattress company in March or April 1995. He admitted that he worked from four to eight hours on some days, though never a forty-hour week. Contrary to his deposition testimony in the instant case, he acknowledged that he earned income through company sales. Also, Hernandez's answers to interrogatories in the instant suit and the federal suit are inconsistent. In this case, he failed to mention Hernandez Mattress Company in his past employment history. Yet, in the federal case, he stated that he worked there in December 1995.
In opposition to defendants' motion for summary judgment, Hernandez argued *869 that any misrepresentations he made at the deposition on 10 March 1999 were "thoughtless" and "inadvertent," but not "willfull[willful]" for purposes of forfeiting workers' compensation benefits pursuant to LSA-R.S. 23:1208. He argued that if he had intended to deceive the defendants he would not have authorized the release of his medical records. Hernandez attributed his failure to recall the 1988 automobile accident and other past events to the pain medications he was taking when the defendants deposed him in March 1999. As to his neck injury from the 1975 motorcycle accident, Hernandez claimed that he never denied that he sustained an injury but rather referred to it as a collar bone fracture.
Regarding his employment with the family mattress company, Hernandez argued that his 1997 deposition testimony is consistent with his 1999 deposition testimony. At both, he testified that his involvement in the business was minimal and he received no remuneration. Hernandez claimed the defendants misconstrued his answer referring to his generating company sales as that he received income from the company. He explained that he was involved with the company in 1997 because he was training his daughter to assume his responsibilities. By 1999, his daughter had been trained and had relieved him of most of his duties.
An appellate court asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. See Potter v. First Fed. Sav. & Loan Association of Scotlandville, 615 So.2d 318 (La.1993). Summary judgments are governed by Louisiana Code of Civil Procedure article 966. This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action... The procedure is favored and shall be construed to accomplish these ends." LSA-C.C.P. art. 966(A)(2). In 1997, the legislature enacted LSA-C.C.P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgement, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Further, LSA-C.C.P. art. 967 provides in part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his responses by affidavits or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
Defendants submitted to the workers' compensation judge ample evidence demonstrating that Hernandez made false statements at his deposition on 10 March 1999 for the purpose of obtaining workers' compensation benefits. His testimony clearly contradicted the information disclosed in his medical records regarding his past physical injuries and his injury at issue. Likewise, his testimony conflicted with his earlier 1997 deposition testimony regarding his past employment at his family business.
*870 Hernandez's misrepresentations go to the crux of the matter, whether he is entitled to additional benefits, including back surgery. Even assuming, for the sake of argument, that Hernandez's failure to recall the accidents and injuries which occurred ten or more years ago was inadvertent, the more recent, blatant inconsistencies in his 1997 and 1999 depositions support the finding that his misrepresentations were willful. In view of this, and after reviewing the record, we cannot say the workers' compensation judge erred or abused her discretion in terminating Hernandez's benefits on the basis that the misrepresentations were willfully made. The first and second assignments of error are without merit.
In his third assignment of error, Hernandez claims the workers' compensation judge erred as a matter of law by not applying the statute that was in effect at the time of his accident at ESKCO in March 1989.
Prior to 1 January 1990, La. R.S. 23:1208 required a criminal conviction before the employee forfeited workers' compensation benefits. The legislature, however, eliminated the necessity of a criminal conviction as a prerequisite for a claimant's forfeiture of benefits by amending Section 1208 to require only a "violation" of the Section. 1989 La. Acts, No. 454. The Louisiana Supreme Court in Resweber, supra, considered the issue of whether the date of the injury or false statement determined the applicable statute and explained:
The triggering mechanism which makes [Sections 1208 and 1208.1] applicable is the making of a false statement or misrepresentation, not the occurrence of an accident or injury. Accordingly, it is the date the false statement or misrepresentation was made that is determinative in deciding which version of these provisions apply.
Resweber, 660 So.2d at 10, ftn. 1. Thus, the workers' compensation judge did not err in applying the statute that was in effect on 10 March 1999, the date Hernandez made the false deposition statements.
Next, Hernandez complains the workers' compensation judge erred in determining that his statements were willful and intended "for the purpose of obtaining" benefits as contemplated by the statute because he had sustained the work-related injury ten years earlier and was receiving benefits when he made the alleged false statements.
We find no merit to this argument. Following Hernandez's reasoning, a claimant who is injured and begins receiving benefits can then willfully misrepresent his condition, prior injuries, and ability to work because the false statements would not be "to obtain" benefits. Such an interpretation undermines the legislative intent of the statute and is illogical.
Here, Hernandez filed a Form 1088 with the Office of Workers' Compensation to obtain additional benefits after the defendants had reduced his weekly benefits from $238.15 to $124.83. He also sought additional benefits for medical expenses, prescription drugs, and authorization for back surgery, which the defendants had denied. Clearly, Hernandez's false statements were made for the purpose of obtaining compensation benefits.
Finally, Hernandez argues the workers' compensation judge lacked subject matter jurisdiction to determine a forfeiture of benefits pursuant to La. R.S. 23:1208.
We find no merit to this argument. La. R.S. 23:1208 D specifically provides that "an person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge..." and subsection E provides that "[a]ny employee violating this Section shall, upon determination by [the]workers' compensation judge, forfeit any right to compensation benefits under this Chapter." Thus, pursuant to the statute, the workers' compensation judge had subject *871 matter jurisdiction to determine the forfeiture.
For the foregoing reasons, the judgment of the workers' compensation judge granting summary judgment in favor of the defendants and terminating Hernandez's workers' compensation benefits is affirmed.
AFFIRMED.
NOTES
[1] Gary Hernandez v. St. Bernard Parish Sheriff's Office, et al., Civil Action No. 96-4081, United States District Court for the Eastern District of Louisiana.